LYDIA E. LITTLER ET AL. *v.* JOHN T. BODDIE ET AL.

[61 South. 171.]

TAXATION. *Tax sales. Validity. Limitations. Code* 1906, *section* 3095.

Under Code 1906, section 3095, providing that "actual occupation for three years, after two years from the day of sale of land held under a conveyance by a tax collector in pursuance of a sale for taxes, shall bar any suit to recover such land or assail such title because of any defect in the sale of the land for taxes or in any precedent step to the sale, etc., it is immaterial that the only evidence of a sale offered is not the certificate of the tax collector who made the sale, but of the chancery clerk, or that there is no proof other than the certificate of the tax collector that the lands were of the class liable for sale, or that the record does not show that any sale list was filed in the auditor's office as required by law, or that no deed from the tax collector was produced, but only a certificate by the state land commissioner showing a record in his office asserting such sale, such defects being cured by the actual occupancy of the land for three years after two years from the date of sale.

APPEAL from the chancery court of Coahoma county. HON. M. E. DENTON, Chancellor.

Suit by John T. Boddie and others against Lydia E. Littler and others. From a decree for complainants, defendants appeal.

A bill in chancery was filed in July, 1906, by Boddie to remove clouds from title. There was a decree for complainant, and defendant appealed. On October 1, 1873, the land in controversy belonging to one Malcolm McNeill, of Kentucky, who on that date conveyed the same to complainant, a minor grandchild, and from that time forward stopped paying taxes. Thereupon the following tax sales occurred: (1) A sale to the state in 1875 for the state, county, and school taxes of 1874; (2) a sale to the state in 1875, under the Abatement Act; (3) a sale in 1875 to the levee board of district No. 1 for levee taxes of 1874.

Afterwards, the Memphis & Vicksburg Railroad Company purchased the land in 1881 from Gwinn and Hemingway, liquidating levee commissioners, and in 1888 the Louisiana, New Orleans & Texas Railway Company, successor to the Memphis & Vicksburg Railroad Company, obtained a deed from the auditor under the act of 1888. The railroad company conveyed to Smith in January, 1900, and he conveyed to defendants, who settled on the land in that same year, 1900, and cleared and improved the same for their home. Complainant's bill averred, amongst other things, that the tax sales were absolutely void because the taxes of 1873 and 1874 had been duly paid, and therefore that section 3095 of the Code of 1906 did not apply. Defendants denied that those taxes had been paid. Section 3095 of the Code is as follows: "Actual occupation for three years, after two years from the day of sale of land held under a conveyance by a tax collector in pursuance of a sale for taxes, shall bar any suit to recover such land or assail such title because of any defect in the sale of the land for taxes, or in any precedent step to the sale, saving to minors and persons of unsound mind the right to bring suit within such time, after the removal of their disabilities, and upon the same terms as is provided for the redemption of land by such persons. This section shall not apply when the sale is absolutely void and not merely irregular and voidable." Complainants also contend that the sale made in 1875 for state and county taxes of 1874 was void because the only evidence of it offered was not the certificate of the tax collector who made the sale, but of the chancery clerk that such a sale was included in a list of lands sold, as the same appears upon the minutes of the board of supervisors. Complainants also contended that the sale made in 1875 under the Abatement Act was void, because there was no proof independent of the certificate of the tax collector making the sale, that the lands so sold were of the class of lands liable to be sold under the Abatement

Act, no independent proof that they had been sold to the
state prior to 1874. Nor did the record show that any
sales list was filed by the collector in the auditor's office,
as the law requires. Complainant also contended that the
sale made in 1875 to the district No. 1 levee board was
void, because no deed from the tax collector to the levee
board was produced, but only a certificate by the state
land commissioner showing a record in his office asserting
such a sale made.

*Mayes & Longstreet* and *C. N. Burch,* for appellants.

Passing from the topic of the effect of the general ten-
year statute, we come to the narrower question of the tax
titles relied upon by the appellant as an additional muni-
ment of title.

The court will remember that her titles run as fol-
lows: 1. Liquidating levee tax title of 1868; 2. State
tax title of 1875; 3. Title under the Abatement Act of
1875, acquired in 1875; 4. Title of 1875 by sale of levee
board of district number one.

Those four titles, or some of them at all events, come
to the appellant in the following way: 1. By the Gwinn
& Hemingway deed, being liquidating levee commission-
ers, of the year 1881; 2. By the auditor's deed under the
statute of 1884; 3. By the auditor's deed under the act
of 1888.

Pretermitting, for the present, the question of its orig-
inal validity and the question of its redemption, we in-
voke the liquidating levee title of 1868 as the basis for the
operation of the curative provision in the Act of 1840, p.
216.

This statute made two independant provisions. 1.
That a sale made thereunder should not be (at any time)
questioned for any causes except fraud or mistake in the
assessment, or in the sale, or by proof of payment before
the sale; 2, that no suit to set aside such a sale should be
brought, unless within five years from the date of the
sale.

The last prohibition meant that no suit should be brought to set aside such sale for any cause (*Sigman* v. *Lundy*, 66 Miss. 522); and it did not turn on any condition of occupancy under the sale. *Belcher* v. *Mhoon*, 47 Miss. 613; *Carlisle* v. *Yoder*, 69 Miss. 384; *Woodruff* v. *State*, 77 Miss. 68, 112. It was and is constitutional. *Griffin* v. *Dogan*, 48 Miss. 11; *Bell* v. *Coates*, 54 Miss. 539.

It was not a mere statute of limitations, but constituted an essential element in the purchaser's contract, which runs with the land and cannot be impaired by subsequent legislation. *Sigman* v. *Lundy*, 66 Miss. 522.

It applied when the state or a levee board became the purchaser. *Sigman* v. *Lundy, supra.; Pipes* v. *Farrar*, 64 Miss. 514.

It not only made the tax collector's deed evidence of the sale, but also made it *prima facie* evidence of good title. *Green* v. *Williams*, 58 Miss. 752; *Hardie* v. *Chrisman*, 60 Miss. 671.

Pretermitting also for the present, the question about their original validity, we also invoke the three sales of 1875, and each of them, as based for the operation of the curative provision of section 1709 of the Code of 1871, which was in force when those sales were made.

This was a prospective curative act, substantially embodying the act of 1860, not affecting the rights which had accrued to a purchaser under the act of 1860 and under its curative prohibition even a sale made on the wrong day, based on an assessment, void because not returned at the time required by law, could not be assailed. *Nevin* v. *Bailey*, 62 Miss. 433; *Sigman* v. *Lundy*, 66 Miss 522; *Woodruff* v. *State*, 77 Miss. 68, 112.

This statute applied even where the sale was made under a law not applicable; as for state and county taxes of 1874, in May, 1875, when only a sale under the abatement act could properly have been made. *Brougher* v. *Stone*, 62 Miss. 647.

The effect was to cure all irregularities in the sale, even although the sale was void. *Gibson* v *Berry*, 66 Miss. 516;

*Jones* v. *Flannikin,* 69 Miss. 577; *Carlisle* v. *Yoder,* 69 Miss. 384.

Compare these cases with *Carlisle* v. *Christman,* 69 Miss. 392, in which a tax title was held void under identical circumstances, except that there had been no three years' occupancy.

The subsequent repeal, made in 1876, before the lapse of three years from the date of sale, did not affect the rights of the purchasers. *Gibson* v. *Berry,* 66 Miss. 515; *Jones* v. *Flannikin,* 69 Miss. 577.

Under this statute, also, it will be noted that actual occupancy was not required. We invoke, also, as to each and every of those four sales, the provision of Sec. 539, of the Code of 1880, as brought forward into, and re-enacted by, section 2735 of the Code of 1892.

What this statute meant, and the scope of its application, was determined, in the following particulars, by decisions of this court. The section applied as well to a purchaser from the state as to a purchaser from the tax-collector direct. *Pipes* v. *Farrar,* 64 Miss. 514. It applied to sales made before its enactment. *Patterson* v. *Durfey,* 68 Miss. 779.

Three years' actual occupancy bars absolutely any right of action for recovery of the land because of any defect in the sale or in any precedent steps, even if the land was not subject to sale for state and county taxes, because held by the liquidating levee board. *Patterson* v. *Durfey,* 68 Miss. 779. Or even if the assessment roll was not properly returned. *Carlisle* v. *Yoder,* 69 Miss. 384.

The preceding decisions had been made by this court before the statute was re-enacted in the Code of 1892. When so re-enacted, howsoever far it might have been open to this court to reconsider and modify or reverse its conclusions about the meaning of that statute, by such re-enactment, with those constructions put on it, the question of its meaning is, to that extent at least, concluded.

A rule of property was established by which this court is, or should be, bound. The effort to overrule *Patterson* v. *Durfey* and *Carlisle* v. *Yoder,* made in *Hawkins* v. *Railroad Co.,* 78 Miss. 768 (decided in 1901) was futile, because the points were not involved; it was a mere *dictum.*

Further decisions made on this statute since 1892, are the following:

The title is unassailable although the sale was made on the wrong day, and under a law (in that case, the Abatement Act of 1875) not applicable. *Brougher* v. *Stone,* 72 Miss. 647; *Butt* v. *Ricks,* 82 Miss. 533.

Now, all of the foregoing decisions except *Butt* v. *Ricks* had been made, and were the recognized law of the land, when this appellant entered upon her possession in 1900. The decision in *Hoskins* v. *Railroad Co.* had not been made. She had been actually living on the land for six years when this suit was brought.

It was not until 1908, being two years after this suit was brought, that the line of decisions by this court, beginning with *Kennedy* v. *Sanders,* 90 Miss. ——, was started. Meanwhile, the three years' statute, with the constructions and applications of this court on it, was again re-enacted as section 3095 of the Code of 1906. Surely this continuous re-enactment of this statute, with the construction placed on it by this court, shows a legislative policy, in this matter, which is to be regarded.

Such was and is still the condition of the legislation; such was the nature of the decisions of this court until the new departure, beginning in 1908 (90 Miss.) and culminating in *Seals* v. *Perkins,* 51 So. 806. Observe the result in this case.

The railroad company bargained these lands to F. H. Littler, November 26, 1898, who assigned to J. N. Smith, to whom the company executed a deed on January 29, 1900; and he conveyed to his daughter, the appellant; and the Littlers, who were then residents of Illinois, sold out their property there, moved down into this state and

settled on the land in 1900; cleared and improved the same for their home. They have worked into these lands their sweat and brains—and ten years of their lives. Is it to be taken from them, and they perhaps impoverished by an accounting for mesne profits, by a change in judicial decision?

*Maynard & Fitzgerald* and *J. W. Cutrer,* attorneys for appellees, filed an elaborate brief too long for publication.

Argued orally by *J. W. Cutrer* for appellees.

Per Curiam. The evidence in this case not only wholly fails to show that the taxes due on the land in controversy for the years 1873 and 1874 were, in fact, paid, but tends strongly to show that Malcolm McNeill, who appellees claim paid the taxes, purposely refrained from doing so. This being true, we are relieved from determining whether or not section 3095 of the Code applies to a conveyance by a tax collector, void because no taxes were due upon the land sold.

The other defects in the tax sales under which appellants claim, if such there be, have been cured by their actual occupancy of the land for more than three years after two years from the date of sale.

*Reversed, and bill dismissed.*